UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RAUL MENDEZ,<br><br>    Plaintiff,<br><br>vs.<br><br>MOONRIDGE NEIGHBORHOOD ASSOCIATION, INC.; DEVELOPMENT SERVICES, INC.; SHELLI DAYLONG; STEPHANIE CHAMBERLAIN; SHURI URQUIDI, and any other agencies and employees of DEVELOPMENT SERVICES, INC.; JOHN HOXSEY, as an individual and any other past and present board member of the MOONRIDGE NEIGHBORHOOD ASSOCIATION, INC.,<br><br>    Defendants. | Case No. 1:19-cv-00507-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court is Plaintiff Raul Mendez's Motion to Reconsider. Dkt. 22. Mendez asks the Court to reconsider his Memorandum Decision and Order GRANTING in part and DENYING in part Defendant's Motion to Dismiss. Dkt. 21. Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the motion without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). For the reasons set forth below, the Court **DENIES** the motion.

MEMORANDUM DECISION AND ORDER - 1

## II. BACKGROUND

On December 23, 2019, Mendez initiated this lawsuit. Dkt. 2. Thereafter, Defendants moved to dismiss for failure to state a claim. Dkt. 14. The Court GRANTED in part and DENIED in part Defendants' motion to dismiss. Dismissing Mendez's Idaho Collection Agency Act, Idaho Consumer Protection Act, Breach of Contract and of Good Faith and Fair Dealings, Intentional Infliction of Emotional Distress and Fraud claims, but allowing his FDCPA and unjust enrichment claims to proceed. Dkt. 21. Nevertheless, the Court granted Mendez thirty days leave to amend his Complaint. *Id.* at 18. Instead of amending his Complaint, Mendez has filed this Motion to Reconsider. Among other things, Mendez asserts that the Court has deviated from Supreme Court precedent and held his complaint to an "unreasonably high standard" and insists the Court should hold his pleading to a lesser standard because he is representing himself. Dkt. 22, at 1.

## III. LEGAL STANDARD

The Federal Rules of Civil Procedure permit courts to reconsider and amend previous orders. *E.g.*, Fed R. Civ. P. 59(e). "The Court does not take reconsideration lightly. . . . To succeed on a motion to reconsider, a party must first establish they have a right to ask for reconsideration; that is to say, they must establish one or more of the limited grounds for reconsideration are present." *United States, ex. rel. Rafter H Construction, LLC, v. Big-D Construction Corp.*, 358 F. Supp 3d 1096, 1098 (D. Idaho 2019). Once the moving party has established the right, the moving party then bears the burden of persuading the Court "that their purported reasons rise to the level of reversal." *Id.*

Additionally, "there are four limited grounds upon which" a district court may grant a motion for reconsideration: "(1) the motion is necessary to correct manifest errors of fact or law; (2) the moving party presents newly discovered evidence; (3) reconsideration is necessary to prevent manifest injustice; or (4) there is an intervening change in the law." *Coffelt v. Yordy*, No. 1:16-CV-00190CWD, 2016 WL 9724059, at *1 (D. Idaho Nov. 30, 2016) (citing *Turner v. Burlington N. Santa Fe R.R. Co.*, 338 F.3d 1058, 1063 (9th Cir. 2003)). Regardless of the standard or rule under which they are brought, "motions for reconsideration are generally disfavored, and may not be used to present new arguments or evidence that could have been raised earlier." *Am. Rivers v. NOAA Fisheries*, No. CV-04-00061-RE, 2006 WL 1983178, at *2 (D. Or. 2006) (citing *Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1442 (9th Cir. 1991)); *see also Carrol v. Nakatani*, 342 F. 3d 934, 945 (9th Cir. 2003) (explaining that motions to reconsider are "an extraordinary remedy, to be used sparingly in the interest of finality and conservation of judicial resources") (quoting 12 James Wm. Moore et al., Moore's Federal Practice § 59.30[4] (3d ed. 2000)).

### IV. DISCUSSION

There are several reasons for the Court to deny Mendez's motion. First, Mendez identifies no right for the Court's reconsideration. He cites no rule, discusses no caselaw, and provides no authority providing the Court a basis to do so. This alone is fatal to his motion. *See Big-D Const. Corp.*, 358 F. Supp. at 1098. (Where the court held, as a threshold matter, the moving party must establish a right to ask for under the Federal Rules of Civil Procedures.)  Second, Mendez fails to demonstrate to the Court why it should reconsider. He does not address the four grounds for reconsideration as outlined in *Coffelt*, let alone

does he persuade the Court that one of those grounds applies to this situation. This also undermines Mendez's claim.[1]

Third, even if Mendez had established a right to move for reconsideration, as is required, the outcome would nonetheless be the same because Mendez has not persuaded the Court that its analysis rises to the level of reversal. As Mendez continually mentions, he is a *pro se* litigant. Though the court is not obligated to do so, it will briefly analyze Mendez's claim as though properly brought under the relevant Federal Rule of Civil Procedure 54(b), which allows for reconsideration of non-final orders.

A party moving for reconsideration under the Federal Rules for Civil Procedure must "set forth facts or law of a strongly convincing nature to induce the Court to reverse its prior decision." *Id*. at 23–24. Generally, these include (1) an intervening change in law; (2) the discovery of previously unknown evidence; and (3) the correction of a clear or manifest error in law or fact. *Id*. at 23–24.

### A. An Intervening Change in Controlling Law

"A motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, *or if there is an intervening change in the controlling law*." *Nakatani*, 342 F.3d at 945. (emphasis added) Thus, Mendez would need to demonstrate there was an intervening change in the law that would have materially affected the Court's

---

[1] To be fair, Mendez arguably addresses the first ground for reconsideration—a manifest error of law—but he does not cite, explain, or mention that ground. Dkt. 22. And he does not persuade the Court that ground exists as explained below.

MEMORANDUM DECISION AND ORDER - 4

judgment. Mendez, manifestly, falls short of this; he offers nothing by way of his Complaint or his Motion for Sanctions that even suggests there has been a slight adjustment to the controlling law for either. Instead, he merely recites existing and "settled law." Dkt. 22, at 3.

### B. The Discovery of New Evidence

Absent a change in the controlling law, a court may reconsider and change an order upon discovering previously unknown evidence. "A district court generally should not grant a Rule 59(e) motion in the absence of 'newly discovered evidence.'" *Wells Fargo Bank v. Mahogany Meadow Ave. Tr.*, 979 F. 3d 1209 (9th Cir. 2020). To that point, a motion "may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier." *Id.*

This, more than the other factors, highlights the oddity of Mendez's Motion to Reconsider. Mendez again offers nothing new—no new facts that were previously unknown to him. Instead, he doubles down on the old factual allegations of his previous claims. A motion to reconsider is not a motion to reargue the allegation of a claim or to provide a second bite at the apple. *See Big-D Const. Corp.*, 358 F. Supp. at 1098 ("A losing party cannot use a Rule 59(e) motion to relitigate old matters.") Instead, it is a rule designed to prevent injustices if *new evidence*, entirely unknown to the movant at the time, is found before final judgment. Or in the case of a pleading, new facts that make whole the elements of a cause of action or increase the plausibility of an allegation. Alternatively, leave to amend a complaint is precisely the procedural path one needs to take when they have no new facts or evidence to offer.

MEMORANDUM DECISION AND ORDER - 5

Mendez falls short of the standard by offering no new facts or evidence that strengthens his case for sanctions or his alleged claims.

### C. The Correction of a Clear or Manifest Error in Law or Fact

Clear or manifest error is a high standard. As one court noted, "for a decision to be 'clearly erroneous' it must be 'more than just maybe or probably wrong; it must be dead wrong.'" *Garcia v. Biter*, 195 F. Supp. 3d 1131, 1133 (E.D. Cal. 2016) (quoting *Hopwood v. Texas*, 236 F.3d 256 (5th Cir. 2000)). "A movant must demonstrate a 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" *Id*. (quoting *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000)).

Federal Rule of Civil Procedure 12(b)(6) authorizes a court to dismiss a claim when the Plaintiff fails to "state a claim upon which relief can be granted." Additionally, dismissal may occur when the Plaintiff fails to demonstrate a "cognizable legal theory" or if there is an "absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008). The underlying policy of this is to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007). This, in turn, allows defendants to prepare a proper response and craft an efficient defense.

When analyzing a cause of action, the "court must accept as true all well-pleaded factual allegations made in the pleading . . . ." *Ashcroft v. Iqbal*, 556 U.S. 662, 682 (2009). However, the court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Id.* at 678. This is the rule of law, and it applies to all who wish to file a claim with the court; parties to cases are not

held to different standards of law based on their training or education.

In its Order, the Court rested each of its decisions on the relevant law. Thus, Mendez does not attack or demonstrate how the Court misapplied the law to each claim, which he would need to do. Instead, Mendez broadly attacks the Court's dismissal believing the claim, as a whole, was held to an improperly high standard. And thus, in Mendez's view, this is where the Court has departed from the controlling precedent.

Mendez is correct in pointing out that pleadings made by *pro se* litigants are to be held to a "less stringent standard." *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)) ("A *pro se* complaint, 'however inartfully pleaded,' must be held to 'less stringent standards than formal pleadings drafted by lawyers' and can only be dismissed for failure to state a claim if it appears 'beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief'"); *see also Haines v. Kerner*, 404 U.S. 519 (1972).

However, Mendez construes this to mean that *pro se* litigants are entitled to a less stringent rule of law, which is simply not the case. For example, under Idaho law, there are four elements needed to establish a claim of intentional infliction of emotional distress: "(1) The conduct must be intentional or reckless; (2) the conduct must be extreme and outrageous; (3) there must be a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress must be severe." *Eldridge v. West*, 458 P.3d 172, 178–79 (Idaho 2020). To properly plead a claim for intentional infliction of emotional distress, Mendez would need to allege facts to support even the mere plausibility of each element of the tort. Under its obligation to give a liberal reading to *pro se*

complaints, the Court would hold these factual allegations to a less stringent standard than one drafted by a lawyer.

However, this does not mean that Mendez need not allege any facts to support an element of the cause of action. To do that would be to modify the law itself and create two parallel rules law: one for lawyers and one for *pro se* litigants. That is to say that under Mendez's application of a pleading standard for *pro se* litigants, one could bring a cause of action, *pro se*, for intentional infliction of emotional distress absent a causal link between the alleged activity and the injury or absent intentionality or recklessness. At the same time, a plaintiff with an attorney would need to plead facts alleging all elements of the tort. This is simply not the impetus for the "less stringent standard" for *pro se* complaints. To be clear the Court does not take exception with the "inartful" nature of Mendez's *pro se* complaint nor his "failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction or litigant's unfamiliarity with rule requirements." Dkt. 22, at 3–4. The Court takes exception with his failure to allege facts that even when liberally construed, comport to the necessary elements of a cause of action.

## V. CONCLUSION

Mendez failed to bring to light any change to the controlling law that would have had a material effect on the Court's decision. Further, he was unable to bring to the Court's attention any previously unknown facts or evidence that would have had a material effect on the outcome. Finally, Mendez fails to demonstrate to the Court that it wholly misapplied or completely disregarded the controlling law in its application of the pleading standard to *pro se* litigants. As such, his Motion to Reconsider is **DENIED**.

One of the driving forces for a Court's reluctance to grant motions for reconsideration is the need for the efficient use of judicial resources to prevent the court from using its limited time and finite resources on relitigating issues over and over again. Mendez was given thirty (30) days by the Court to amend his Complaint; he chose, however, to file a Motion to Reconsider. Since the original 30 days have passed, and the Court is denying the Motion to Reconsider, Mendez may have 15 days to file the Amended Complaint called for in the original order (Dkt. 21) or he can proceed only as to the surviving claims. ("Mendez may seek leave to amend his Amended Complaint. In the event Mendez does so, he must concurrently file both a Motion to Amend, and a redlined Second Amended Complaint, showing the changes he has made to his Amended Complaint, within thirty (30) days of the date of this Order. In the absence of such filing, the claims will be dismissed with prejudice.") Dkt. 21, at 17–18. Regardless of whether Mendez files a proper Motion to Amend and Amended Complaint, Mendez is free to move forward with his surviving FDCPA claim and unjust enrichment claim.

## VI. ORDER

The Court HEREBY ORDERS:

1. Mendez's Motion for Reconsideration (Dkt. 22) is **DENIED**.

DATED: June 15, 2021

David C. Nye
Chief U.S. District Court Judge

MEMORANDUM DECISION AND ORDER - 9